318-0349-20S v. D.B. May it please the Court. Good morning, Your Honors. Good morning. Others in the courtroom. Will you please speak up? Yes, I apologize in the name of my son. This is not as much an amplification as a recording. I see. Okay, very good. My name is Catherine Danz. I'm here on behalf of the appellant, Troy Ashby. The matter at issue in front of Your Honors is what we believe is the improper use of the case law in determining whether an injury occurred out of an employee's accident. Troy Ashby was injured on January 25, 2016. Both respondent and petitioner acknowledged that he fell in a set of stairs that are at issue in this matter because it's the appellant's contention that the arbitrator and the commission have improperly applied an incorrective law as it relates to this case. In particular, the appellant argues that the arbitrator and the commission, in looking at a case that contemplates an employee who is exposed to a level of risk that's no greater than the general public, in using that case, they came to the decision in this matter. And we are arguing that that was an improper use of that case. Is this a neutral risk? I mean, aren't the cases that say traversing and falling down stairs generally considered to be neutral risks? In this matter, we don't believe it's a neutral risk. In particular, the appellant was a dishwasher for the defendant and he fell going up to the stairs to clock in. He was a petitioner who was making $10,560 a year. Why did he fall? Ma'am, why did he fall? He fell because he was a dishwasher and he was wearing a pair of boots. So what? The boots were used to keep his feet wet during the dishwashing activity. I'm sorry, dry, excuse me. What did he want to do? Well, the respondents argued that the boots were worn. Respondents argued that the boots weren't tied. That's part of it, but they also, and three individuals have testified, if I'm not mistaken, that they're also worn. Did your client say there was something wrong with the boots or did he say he slipped because the floor was wet? My client said that he slipped and fell in an area that was not exposed to the general public. He said that he slipped and fell because it was wet. Yes, but he said that if he were in an area that was dry. And two witnesses testified it was dry. I see five of the respondents in place served the stairs to help testify that the stairs were dry. Did you believe your client? The stairs were specifically required to go up the stairs to clock in. So what? Every employee was required. Ma'am, everybody has to climb stairs. So what difference does it make that he had to climb stairs? Unless there's something wrong with the stairs, we're going to do it more frequently than people normally climb stairs. What's the qualitative difference? The qualitative difference in this case is that these stairs in particular were not available to the general public, not astaining the defendant's argument to the contrary. Is that qualitative? Excuse me? Is that qualitative? There's something different about these stairs? No, it's that this defendant was wearing boots for his employment as a dishwasher and going up the stairs. You're not answering my question. I apologize. I'm failing to understand your question. What is qualitatively different about these stairs than any other set of stairs? Are the risers higher? Are the risers lower? Are the treads deeper? Are they narrower? Perhaps that's a matter of fact that should be addressed at the lower levels. Perhaps that's the case, but that's not what the circuit court – I'm sorry, I apologize. That's not what the arbitrator found. The arbitrator did not look to the quality of the stairs. They looked to whether these were an ordinary course of risk. I don't think you understand. It's a mutual risk analysis, and the only time mutual risk can yield benefits under the Act is if that risk is qualitatively or quantitatively different than that to which the general public controls. Now, the risk is the risk of going upstairs or coming downstairs. So I'm back to the same question I asked you before. What's qualitatively different about these stairs than any other set of stairs? And what is quantitatively different? And is the act of going up these stairs compared to the general public going up and down stairs? I think the question is, is perfect, is apt, is exactly the answer that should have been addressed, but quite frankly, it was not addressed by both the appellate court – I'm sorry, by the arbitrator or the commission. Okay. You're correct. Where in the record is there evidence for them to address that – those issues? Does the record have some factual evidence that would suggest? I would like to have the opportunity to brief this court on that issue, if we could do that. Did you try this case? I did not try this case. Okay. So you're dealing with the record you're giving? I am dealing with the record I'm giving, and in fact, the individual attorney who had argued this case was – unfortunately, the weather downstate is much different than the weather here, and he lives on a farm, and I'm not kidding you when I'm telling you that he is literally snowed in because he's in a valley of an area. Let's assume – I think everything you're saying is true. Let's assume there's gaps in this evidence. It would have been nice, as the case was argued earlier, I'm sure you would have, if there was nothing specifically – but the version I think you'd have to agree and concede is totally unacclaimed here. If the evidence doesn't delineate specifically what it is about these stairs that's a problem, in the record, all of the briefing isn't going to help anybody because it's either in the record or it's not, correct? I agree, but what I think would just – please review the decision in this, because that is not the finding that the arbitrator or the commissioner made. They did not, in my opinion – When you're reading what the arbitrator found? For Petitioner to prove that his actions were allowed in the course of the employment for a respondent, he must prove that his employment exposed him to a greater degree of risk than the general public, citing the Caterpillar. When Petitioner was climbing the stairs and was performing an activity of daily life, also performed by members of the general public, his employment by a respondent did not expose him to a greater degree of risk than that of the general public. The qualitative, quantitative analysis is the analysis that goes into determining whether the risk was greater than that towards the general public is exposed. And I would point you then to the arbitrator's decision and the finding of facts, where they talk at length about the fact and focus – the broad of the focus of the appellate court – I'm sorry – the arbitrator's decision and the commissioner's decision is that whether the stairs were used by the public. That is the focus that the lower arbitrator and the commissioner had focused on, not the specific matters of fact that you were finding. So in that absence – The arbitrator's conclusions are there. I understand that, but I see it to you, Your Honor Hoffman. If you were to go back and look at the full appellate court or the arbitrator's decision and the commissioner's decision, you would see that the brunt of the force of the decision is whether this stairwell was open to the public. There wasn't any evidence on that. There wasn't any evidence presented. The plaintiff said he didn't say it was not open to the public when the employees from the company or the restaurant said that it was open to the public. What I will tell you on that is that the petitioner claimed that he was not aware that it was open to the public. And on the second floor, here's what you will find. You will find the clock room. While every employee is required to clock in, you will find the employee sitting room or the employee locker room. And occasionally one or two, maybe more, testified on their side that this area, this highly specialized area at the top, was used for a cooking demonstration. Could you tell me what difference that makes? I apologize, I couldn't hear you. Could you please tell me what difference it makes as to whether those stairs were used by the general public or not? That's exactly what we think is the problem. We believe that the arbitrator and the commissioner did not look as to the facts as to whether the stairway or the risk itself was, as you said, qualitatively different. Are you saying they didn't look into or evidence wasn't presented on behalf of the plaintiff to delineate? We believe that evidence was presented that the petitioner was wearing boots. And there was evidence, by the way, it wasn't dry. There was evidence that there was weather on that day. It was January 18th. He clearly said there was. I agree with you 100%. There was evidence in this record that the stairs were wet provided by the plaintiff. There were five witnesses on the other side that said that they were dry. Correct? So how is that against the manifest weight of the evidence? You tell us. I'm not necessarily saying that the fall was attributed solely to the fact that it was wet or dry. What is on the evidence is that this petitioner was in a pair of boots ascending a set of stairs to go clocking in in his ordinary course of business to argue that if this is a general public issue, that we're always a protection for any employee who works at a place where general public has access to it. To find otherwise. There wasn't a testimony that I'm not sure what the relevance of what type of footwear he had on at the time there is. But there was evidence that the boots were untied. There was also testimony that there was rubber peeling off of it. Of his boots? Again, the condition of the boots. Yes. And I'm not sure what part of it. I'm assuming they're referring to the sole of the boot that was maybe loose or coming off and that it clogged on the step. There's a testimony about the steps themselves. There could have been nothing better about the steps as far as even if they wore them. It seems like the boots were being alleged to have caused this fall more than the steps. So I don't understand what you're. You continue to say that he was wearing boots. What is the relevance of that? The relevance of that is because he was a dishwasher. He wore the boots to keep his feet dry. It was his choice or the company's? The company did not mandate it, but I think any person who is reasonable, a reasonable person, would say I should keep my feet dry in order to at least maintain the safety I'm able to. His ability to maintain the safety is directly tied, I would submit to you, to the ability of him to produce a wage of this employment where he made $10,560 a year. He was doing the best he could to preserve his safety. I would submit that to this court. Is that including time issues? That was. That would. A reasonable person. Counsel, do you have time in reply? Thank you very much. Okay, please court. Counsel, good morning. My name is Chris Crawford and I represent the respondent. We respect the request that you affirm the commission's decision denying all benefits in this case. This case is one that is judged by whether or not the commission's decision is against the man who persuaded the evidence. Simply put, the petitioner fell while ascending a set of stairs. Counsel brought up the argument of the fact that they're allegedly an employee-only staircase. There was evidence to suggest that they weren't. It was open to the general public. But that consideration does not matter in this case. So, again, we go back to the manifest way of the evidence. The fact that it does matter in this case. The fact that it does matter is whether or not there was some condition on those stairs that presented an increased risk to the petitioner. Thereby, under the neutral risk analysis, was there some risk incidental to his decision? That's not the neutral risk analysis. That would be an employment risk analysis. If there's something wrong, if there's a defect in the stairs of some kind, that's an employment risk. This is a neutral risk analysis. So, consequently, we must assume that absent a qualitative or quantitative difference between the activity, which is normal to the general public, then it is non-compensable. Agreed. If it's qualitatively or quantitatively different, a neutral risk may be the basis for recovery under the Act. Right. And on the qualitative front, we're looking at whether or not the stairs present some conditions different from other stairs that the general public might encounter. Okay. So, in this case, we had five witnesses. In the record, the petitioner's clear explanation as to why he slipped and fell on these stairs is that the stairs were wet or his shoes were wet. Five witnesses testified the stairs were not wet, his shoes were not wet. Right. That alone, I think, supports the Commission's decision, and against the manifest way of the evidence, the case should be affirmed. We went further to present weather records that showed trace amounts of rain never described in time when the rain actually fell. So, at best, you have a missing on the ground outside that, according to one of the witnesses, would likely be absorbed with all these safety mats that are placed around the landing of the stairs. Then the stairs themselves have the dimpled protection on them, the rubber coating, that, again, is more about water absorption. Okay, so, I mean, these stairs were probably better than most, and certainly Is the dimpled tread about water absorption? I think it's also about friction. It's about friction. It's about friction. I use the dimpled tread as an imagery for your honors to consider so we can get a picture of these stairs. There was no real evidence presented about how these things are superior to other forms of stairs. But I do think it shows an effort on their part to have some traction, to have some slip protection. The other thing is, you know, there's no evidence as to whether they were rubber or vinyl. I think the testimony was rubber coating. Rubber coating. Rubber coating. Yeah, yeah. The dimples aside. Well, I've been in the source. I mean, I speak outside of records, so. I don't. I don't have pictures. I had five witnesses. But in any event, on the qualitative side, that goes to show, on a qualitative amount, when you look at a neutral risk, I think there was no qualitative element to show that these stairs were different from others. On a quantitative basis, at most, he ascended the stairs up, down, clock in, and then up, down, clock out. He wasn't. His part was that he was a chef. He's not going up and down the stairs. He's not. That would be a quantitative. Yeah, and I think, you know, these cases where you want to talk about compensability is if they're holding something, a rail break, something, you know. That's why I've seen these cases of compensation. Not simply the act of going up and down the stairs. Well, there are cases that, as you said, there's a well-settled precedent that the act of going up and down the stairs is a neutral risk. Correct. Period. Was there a handrail? Yes. Yes, and a landing. There's one staircase up to the landing and a second staircase to the landing. Was there some evidence of taking steps in delivery? Yeah. You know, the arbitrator really didn't focus on that, but we presented a witness who was watching the petitioner ascend the stairs just prior to the accident, and he was skipping stairs, you know. So on the credibility front, I think. Well, if that were believed to be true, then does that become a personal risk? Personal risk, horseplay, you know, clearly not compensable. I mean, I think you could... Tell me how you would categorize it. I would categorize it as horseplay. In fact, I think I argued that in the alternative in my brief to the arbitrator, which the arbitrator did not accept that line of reasoning and instead decided to do the neutral risk, which, frankly, that's a better bet for me because horseplay is tougher. Credibility issues on the petitioner. I mean, I think he has some inconsistencies in the medical process. Well, including the poor condition of the shoes and the testimony or evidence that they were not tied. Well, I included the evidence that they weren't tied in addressing whether the shoes were worn. I mentioned, one, that the petitioner never explained that he felt he had problems with the shoes that led to the fall. Number two, as I pointed out in my brief, and I think I had witness testimony to support it, the types of shoes he had on was not a requirement of his employment. So that's... I did address the shoes, but at the end of the day, I had some of the witnesses saying the standards were dry. He said they were wet. The arbitrator agreed with my witnesses on a manifest weight standard. I believe the commission's decisions have been affirmed, and we're going to let you do so. Thank you. Thank you. Counsel, you made a call. I made a call. Okay, very good. Thank you. Thank you, Counsel Wells, for your arguments in this matter. You will be taken under advisement in the written disposition.